**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEBRASKA (Roman L. Hruska U.S. Courthouse)**

**John Doe 1,**

**Plaintiff,**

**v.**

**Sarah J. Linthacum, OSHA WPP Investigator, in her personal and official capacities;**
**Kristina Carignan, OSHA WPP Investigator, in her personal and official capacities;**
**United States Department of Labor – Occupational Safety and Health Administration (OSHA);**
**David Keeling, Assistant Secretary of Labor for OSHA (Official Capacity);**
**Lincoln Premium Poultry (LPP);**
**Signal Security;**
**Defendants.**

**Case No. 8:25-cv-00590**

**RESPONSE TO COURT, AMENDED COMPLAINT, AND WRIT OF MANDAMUS**
**(Bivens: APA: Rehabilitation Act §504; ADA Title II; OSH Act §11(c); Mandamus; Declaratory & Injunctive Relief)**

## INTRODUCTION

This case arises from a targeted campaign of unconstitutional coercion, retaliation, and bad-faith obstruction by two OSHA Whistleblower Protection Program (WPP) investigators against a whistleblower. Their conduct was designed to sabotage his retaliation complaint and weaponize the investigative process to benefit the employer-respondent.

Plaintiff reported serious workplace safety hazards, triggering two distinct and legally separate OSHA processes: (1) a confidential OSHA Safety Investigation under the

Occupational Safety and Health (OSH) Act, and (2) a Whistleblower Retaliation Investigation under Section 1977, administered by the WPP. By law and policy, these investigations are separate. Information in the safety investigation is treated as confidential, especially while ongoing. In contrast, information a complainant provides to the WPP is, by rule, provided to the employer for a response.

Defendants Linthacum and Carignan, WPP investigators, attempted to illegally bridge this separation. They demanded—under explicit threat of dismissal—that Plaintiff provide them with confidential documents and information from the ongoing, confidential OSHA Safety Investigation. As evidenced by the September 24-25, 2025 emails (Exhibit A), they conditioned the continuation of his whistleblower complaint on this surrender. Their goal was clear: to forcibly extract Plaintiff's confidential evidence and, per WPP procedure, automatically transmit it to the employer-respondent. This scheme constituted a gross abuse of authority, a violation of due process, and a demonstrative act of bias in favor of the respondent.

When Plaintiff did not comply and instead questioned this unlawful demand, Defendants retaliated by fabricating a "coverage issue" after Plaintiff informed them he had sought external review with the Assistant Secretary of Labor and the Office of Special Counsel. This conduct followed an earlier effort to deprive Plaintiff of his rights under color of law, intended to condition the whistleblower into surrendering confidential documents in order to undermine a safety investigation.

That deprivation included not merely denying reasonable disability accommodations, but engaging in aggravated misconduct: making false statements about applicable law, misrepresenting the protections Plaintiff invoked, and acting entirely outside the scope of a proper investigation. This irrational behavior was compounded by OSHA's failure on the safety side to attend a scheduled on-site interview, abandoning its duty to inspect imminent hazards, and ultimately closing the safety case based solely on the employer's self-investigation even after a catastrophic amputation occurred.

## I. WITHDRAWAL OF JOHN DOE 2 WITHOUT PREJUDICE

Pursuant to the Court's directive requiring Plaintiff John Doe 2 to correct technical defects, Plaintiff hereby withdraws John Doe 2 without prejudice so that this matter may proceed efficiently and without procedural interruption.

This withdrawal is necessary because:

1. The shared email account used by both Plaintiffs—JohnDoeOneAndTwo@gmail.com—was disabled by Google without warning, preventing John Doe 2 from accessing Court communications.

2. John Doe 2 is presently unable to comply with the Clerk's direction to submit a signed complaint or application to proceed in forma pauperis.

3. Withdrawal avoids unnecessary delay, conserves judicial resources, and preserves John Doe 2's right to refile as appropriate.

This withdrawal is made in good faith and with no intent to prejudice John Doe 2's rights in any judicial or administrative forum.

---

## II. RETAINED DEFENDANTS: LPP, SIGNAL SECURITY, AND REPLACEMENT OF JULIE SU WITH DAVID KEELING

To address the nonfeasance and malfeasance of the Department of Labor–OSHA with greater focus, and in keeping with the federal courts' mandate to secure the "just, speedy, and inexpensive determination of every action" (Fed. R. Civ. P. 1), Plaintiff **retains LPP and Signal Security as Defendants** in this action. Plaintiff has initiated renewed, documented contact with these parties prior to the entry of a Scheduling Order to compel confirmation of their retention of all relevant evidence, including surveillance footage, in the hopes that these specific matters may be resolved without further litigation. Their continued inclusion is necessary to ensure complete relief and prevent spoliation.

Julie A. Su is removed as she is no longer the Acting Secretary of Labor with responsibility for OSHA, having been replaced by **Assistant Secretary David Keeling**, who is hereby named as a Defendant in his official capacity.

### III. PARTIES

1. **Plaintiff John Doe 1** is a whistleblower who reported imminent workplace safety hazards. Due to PTSD, he requested and was denied reasonable accommodations for written-first communication during OSHA's investigative process.

2. **Defendant Sarah J. Linthacum** is an investigator with OSHA's Whistleblower Protection Program (WPP). She is sued in her official capacity for injunctive relief and in her personal capacity for unconstitutional coercion, retaliation, violation of disability rights, deprivation of due process, misuse of federal authority, and bad-faith conduct.

3. **Defendant Kristina Carignan** is an investigator with OSHA's Whistleblower Protection Program (WPP). She is sued in her official capacity for injunctive relief and in her personal capacity for unconstitutional coercion, retaliation, violation of disability rights, deprivation of due process, misuse of federal authority, and bad-faith conduct.

4. **United States Department of Labor – OSHA** is the federal agency responsible for enforcing workplace safety laws, including the whistleblower protections of §11(c) of the OSH Act, 29 U.S.C. § 660(c).

5. **Defendant David Keeling** is the Assistant Secretary of Labor for Occupational Safety and Health, sued in his official capacity for injunctive relief to compel the performance of OSHA's statutory duties.

6. **Defendant Lincoln Premium Poultry (LPP)** is the employer-respondent against whom safety and retaliation complaints were filed, and which is alleged to have engaged in unlawful conduct including evidence spoliation.

7. **Defendant Signal Security** is a contractor responsible for security and surveillance at LPP facilities, which is alleged to possess and control material evidence relevant to this action.

## IV. JURISDICTION AND VENUE

8. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 over the constitutional *Bivens* claims, and claims arising under the APA, the Rehabilitation Act, the ADA, and the OSH Act. Supplemental jurisdiction exists under 28 U.S.C. § 1367.

9. Venue is proper in this District under 28 U.S.C. § 1391(e) because a substantial part of the events giving rise to these claims occurred here, the Plaintiff resides here, and the Defendant agency and its employees act here.

## V. FACTUAL BACKGROUND AND UPDATED RECORD

### A. OSHA Abandoned the Safety Inspection, Leading to a Preventable Traumatic Amputation

Per Plaintiff's OSC Complaint and prior filings:

- OSHA opened a safety inspection on September 19, 2025 concerning chemical exposure, contaminated filtration systems, lockout-tagout (LOTO) failures, and unguarded cutting equipment.

- OSHA scheduled Plaintiff's interview for September 29, 2025, then failed to appear, later apologizing.

- OSHA never rescheduled, despite Plaintiff's repeated offers and availability.

- OSHA never visited the facility, never conducted any on-site inspection, and never interviewed any critical witnesses, including supervisors, maintenance staff, production-line employees, PAA handlers, sanitation crews, chemical contractors, or the later-injured supervisor.

**Resulting Injury:**

On October 22, 2025, a production supervisor lost three fingers in a traumatic amputation on an unguarded deboner machine—the exact hazard Plaintiff reported and OSHA was obligated to inspect. OSHA's abandonment directly contributed to this preventable injury.

**B. OSHA's Final Act of Bad Faith: Closure of Safety Case Post-Amputation**

- **December 9, 2025:** Following over two months of inaction after the amputation, the OSHA Omaha Area Office formally closed the safety complaint (Complaint #2354805) as a "non-formal inquiry."

- The closure was based solely on the employer's (LPP) self-investigation and claim that the hazards "do not exist," despite the objective fact of the October 22, 2025 amputation on the very machinery reported.

- This closure represents the culmination of OSHA's arbitrary and capricious failure to perform its mandatory duties, opting for bureaucratic expediency over worker safety and demonstrating a profound disregard for its statutory mission.

**C. Renewed and Continuing OSHA Misconduct – Federal Civil-Rights Violations**

In documented communications:

- OSHA investigator Sarah Linthacum, with supervisory approval, repeatedly stated that ADA Title II and Section 504 "do not apply to OSHA."

- OSHA denied Plaintiff's disability accommodations, contradicting:
    - Section 504, 29 U.S.C. § 794;

- ADA Title II, 42 U.S.C. § 12132;
- *Tennessee v. Lane*, 541 U.S. 509 (2004);
- *U.S. v. Georgia*, 546 U.S. 151 (2006);
- *Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001).

- OSHA threatened closure for "lack of cooperation" despite Plaintiff's full compliance through written communication.
- OSHA demanded documents already in its possession.
- OSHA falsely stated that no reassignment mechanism existed.

These actions constitute deprivation of rights under color of federal law under 18 U.S.C. § 242.

### D. No Corrective Action Under New OSHA Leadership

Despite the swearing-in of Assistant Secretary of Labor for OSHA David Keeling on October 2, 2025, OSHA has:

- Not acknowledged Plaintiff's complaints;
- Not reopened or corrected the abandoned investigation;
- Not addressed disability-rights violations;
- Taken no steps to address the amputation or ongoing hazards;
- Allowed the improper closure of the safety case on December 9, 2025.

The misconduct predates and now persists through the leadership transition.

### E. OSHA's Systemic Failure: Missed Interviews and Abandoned Investigations

10. Plaintiff's report of hazards initiated two tracks: a confidential OSHA Safety (On-Site) Investigation and a separate WPP Retaliation Investigation.

11. Safety-Investigation Failure: OSHA scheduled a mandatory on-site screening interview for the Safety Investigation on September 29, 2025. Plaintiff was present and prepared. The OSHA official responsible for the safety investigation failed to appear, call, or email. OSHA never rescheduled this interview, crippling the safety investigation from the outset, and ultimately closed it without ever conducting a site visit.

12. **WPP-Investigation Failure:** Concurrently, Defendants Linthacum and Carignan failed to conduct a proper screening for the WPP complaint. Instead, they engaged in arbitrary and capricious pressure on the whistleblower—sending multiple emails in a day and expecting real-time responses while Plaintiff was at work, attempting to treat that as non-cooperation, misrepresenting disability rights, using undue pressure and coercion to obtain confidential documents from the safety investigation, and finally alleging a "coverage issue" only after Plaintiff sought review from the Office of Special Counsel and the Assistant Secretary of Labor. This "hurry up and wait" pattern, occurring just before the government shutdown, demonstrates bad faith and retaliatory intent.

## F. OSHA's Wholesale Abandonment of Its Mandatory Duties

13. Following the missed interview, OSHA's Safety Investigation took zero meaningful steps. OSHA never visited the facility, never inspected any machine, never conducted a walkthrough, and never interviewed any employee, supervisor, or witness before closing the case.

14. The parallel WPP investigation similarly stalled, with Defendants Linthacum and Carignan employing coercive tactics and stonewalling instead of fact-finding.

15. This across-the-board abandonment breached OSHA's nondiscretionary duties to conduct prompt and reasonable investigations of both imminent dangers and retaliation complaints.

## G. Catastrophic Harm and Institutional Retaliation

16. OSHA's complete failure to act on both investigative fronts directly contributed to a catastrophic, preventable three-finger amputation on October 22, 2025, involving the exact machinery Plaintiff had warned OSHA about.

17. Following the federal shutdown (October 1 – November 13, 2025)—during which essential safety activities were mandated to continue—OSHA did not resume meaningful work. Instead, after Plaintiff notified OSHA he was filing with the OSC and preparing court filings, Defendants asserted a previously unmentioned "coverage issue." The existence of an ongoing, timely safety investigation validates the retaliation complaint under Section 11(c); the belated "coverage" objection is pretextual.

18. This excuse, emerging only after Plaintiff engaged in protected activity, demonstrates institutional retaliation and stonewalling intended to delay, justify dismissal, and punish Plaintiff for seeking external review. The result has been injury to workers and the public.

## H. Coercive and Unlawful Demand for Confidential Safety-Investigation Materials

19. On September 24-25, 2025, Defendant Linthacum sent emails (Exhibit A) explicitly threatening dismissal of the WPP complaint.

20. Linthacum wrote: "I will need you to provide me with the information for this on-site investigation for our investigatory process SHOULD YOU WISH TO CONTINUE WITH OUR OFFICE." (Emphasis in original).

21. The "on-site investigation" referenced was the separate, confidential OSHA Safety Investigation. Defendants demanded Plaintiff turn over confidential documents and information from that legally distinct process.

22. This demand was coercive and unlawful. Any Memorandum of Understanding between OSHA divisions does not authorize WPP investigators to coerce a complainant into surrendering confidential safety materials under threat of dismissal.

23. Defendants have known that under OSHA Whistleblower regulations, any information provided by a complainant to the WPP must be provided to the respondent employer.

24. Therefore, Defendants' demand was structured to: (a) forcibly extract Plaintiff's confidential evidence from the safety investigation; (b) circumvent inter-office sharing limits; (c) ensure that confidential material was transmitted to the respondent, thereby illegally advantaging them and prejudicing Plaintiff; and (d) chill whistleblowing and promote an unsafe environment. This behavior was a causal factor in the October 22 amputation.

## I. The Demand Constituted a Blatant, Unconstitutional Act of Bias

25. By demanding confidential safety-investigation materials in the WPP process, Defendants abandoned their mandatory role as neutral fact-finders. Their actions served no legitimate WPP purpose but the illegitimate purpose of arming the respondent with the complainant's confidential evidence.

26. This demonstrated profound bias in favor of the respondent, violating fundamental due-process rights and OSHA's own impartiality mandates.

## J. Violation of Constitutional Informational Privacy

27. Defendants' demand forced Plaintiff into an untenable position: either disclose confidential information from a legally protected investigation, knowing it would be shared with the employer-respondent, or forfeit his statutory whistleblower protections.

28. This violated Plaintiff's constitutional right to informational privacy. *Whalen v. Roe*, 429 U.S. 589 (1977); *NASA v. Nelson*, 562 U.S. 134 (2011).

## K. Unlawful Denial of Reasonable Disability Accommodations

29. Plaintiff requested written-first communication as a reasonable accommodation for PTSD.

30. OSHA denied this, misrepresenting that the ADA and §504 of the Rehabilitation Act "do not apply." This is a blatant falsehood; §504 (29 U.S.C. § 794) applies to federal agencies.

31. This denial obstructed Plaintiff's access and constituted disability discrimination. OSHA then treated this accommodation need as "non-cooperation."

## VI. CLAIMS FOR RELIEF

## CLAIM I: DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER COLOR OF FEDERAL LAW (BIVENS ACTION AGAINST LINTHACUM AND CARIGNAN IN THEIR PERSONAL CAPACITIES)

32. Plaintiff incorporates all preceding paragraphs.

33. Defendants Linthacum and Carignan, acting under color of federal law, personally deprived Plaintiff of rights secured by the Constitution, including: a. The Fifth Amendment right to due process, freedom from unconstitutional conditions, and freedom from retaliatory government action. *Davis v. Passman*, 442 U.S. 228 (1979); *Hartman v. Moore*, 547 U.S. 250 (2006); *Wilkie v. Robbins*, 551 U.S. 537 (2007). b. The constitutional right to informational privacy. *Whalen v. Roe*, 429 U.S. 589 (1977). c. The right to meaningful access to and petitioning of government processes.

34. Defendants' personal misconduct—coercing the surrender of confidential information under threat of dismissal, retaliating, demonstrating bias, and denying disability rights—falls squarely within established *Bivens* contexts for misuse of investigative authority.

35. There is no alternative remedial scheme providing damages for these personal constitutional torts by federal officers.

36. This case involves line-level personal misconduct, not high-level policy, and is distinct from *Ziglar v. Abbasi*, 582 U.S. 120 (2017), and *Egbert v. Boule*, 596 U.S. ___ (2022).

## CLAIM II: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT (APA), 5 U.S.C. § 706(2)(A)

37. Plaintiff incorporates all preceding paragraphs.

38. OSHA's actions were arbitrary, capricious, an abuse of discretion, and not in accordance with law, including: failing to investigate, fabricating pretext, misrepresenting law, imposing unlawful, coercive demands, **and improperly closing the safety complaint as a "non-formal inquiry" on December 9, 2025, based solely on the employer's self-investigation following a catastrophic amputation.**

## CLAIM III: DISABILITY DISCRIMINATION UNDER THE REHABILITATION ACT §504 & ADA TITLE II

39. Plaintiff incorporates all preceding paragraphs.

40. OSHA, a federal agency, unlawfully denied Plaintiff's request for reasonable accommodation for his PTSD, violating 29 U.S.C. § 794 and 42 U.S.C. § 12132.

## CLAIM IV: RETALIATION IN VIOLATION OF THE OCCUPATIONAL SAFETY AND HEALTH ACT §11(c)

41. Plaintiff incorporates all preceding paragraphs.

42. OSHA's conduct—fabricating issues, threatening dismissal, demanding illegal disclosures after protected activity, and abandoning investigations—constitutes retaliatory actions that chill whistleblowing, violating the administration of 29 U.S.C. § 660(c).

## CLAIM V: ACTION FOR MANDAMUS TO COMPEL OSHA TO PERFORM ITS DUTIES (28 U.S.C. § 1361)

43. Plaintiff incorporates all preceding paragraphs.

44. OSHA possesses clear, nondiscretionary duties to conduct timely investigations and comply with federal law. Its wholesale failure, culminating in the improper closure of the safety case, warrants a writ of mandamus compelling lawful processing of Plaintiff's complaint and the reopening of the safety investigation.

## CLAIM VI: ACTION FOR MANDAMUS TO COMPEL THE U.S. OFFICE OF SPECIAL COUNSEL TO PERFORM ITS DUTIES (5 U.S.C. §§ 1212, 1214)

45. Plaintiff incorporates all preceding paragraphs and prior OSC filings.

46. Plaintiff submitted detailed disclosures to OSC regarding OSHA's misconduct and the resulting amputation.

47. OSC has nondiscretionary duties to evaluate such disclosures, investigate, and communicate with the complainant.

48. OSC's failure to act on these serious public-safety disclosures warrants a writ of mandamus to compel performance of its statutory obligations.

49. OSHA's nonfeasance resulted in, contributed to, or caused an amputation incident of the same nature as the hazards Plaintiff reported, and to this day the agency has taken no corrective action due to its demonstrated animus against whistleblowers.

---

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Award monetary damages against Defendants Linthacum and Carignan in their personal capacities for constitutional violations pursuant to *Bivens*.

2. Issue declaratory judgments that Defendants' acts and policies violated the APA, the Rehabilitation Act, the ADA, the OSH Act, and Plaintiff's constitutional rights.

3. Issue injunctive relief:

    a. Compelling OSHA to immediately and lawfully process Plaintiff's whistleblower complaint under the supervision of a neutral investigator who is not Sarah Linthacum, Kristina Carignan, or any supervisor who approved the unlawful demands described herein.

    b. Compelling OSHA to provide Plaintiff with the reasonable disability accommodation of written-first communication.

    c. Compelling the U.S. Office of Special Counsel to perform its mandatory duties regarding Plaintiff's disclosures.

    d. Compelling Defendants LPP and Signal Security to provide written, sworn confirmation of their preservation of all evidence identified in Plaintiff's preservation notices, including surveillance footage from July 1, 2025 through October 29, 2025.

4. Retain jurisdiction to ensure compliance.

5. Award Plaintiff the costs of this action.

6. Grant any other and further relief the Court deems just and proper.

Respectfully submitted,

**John Doe 1, Pro Se**

---

## PLAINTIFF'S RESPONSE TO THE COURT AND MOTION FOR CLARIFICATION

Plaintiff incorporates his prior Response to the Court's Memorandum and Order, Notice of Withdrawal of John Doe 2 Without Prejudice, Request to Update Contact Information, and Motion for Clarification.

### I. Withdrawal of John Doe 2 Without Prejudice

John Doe 2 is withdrawn without prejudice because Google disabled the shared email account (JohnDoeOneAndTwo@gmail.com), preventing signed filings. This withdrawal is in good faith.

## II. Updated OSHA Failure Facts

As detailed in this Amended Complaint, OSHA missed the scheduled interview, never rescheduled, never inspected, never interviewed witnesses, failed to act on imminent hazards, contributed to the conditions leading to the October 22 amputation, and **improperly closed the safety case on December 9, 2025, based solely on the employer's self-investigation.**

## III. Evidence Preservation Notices & Ongoing Outreach to LPP and Signal Security

On September 4, 2025, Plaintiff issued evidence preservation notices to LPP and Signal Security. Neither provided written confirmation. **Plaintiff has now initiated formal mail correspondence with both Defendants LPP and Signal Security, prior to the entry of any Scheduling Order, to compel them to confirm in writing their retention of all relevant evidence—including surveillance footage from July through October 29, 2025—and to clarify the custody of records between LPP and its contractor.** This outreach is made in a final good-faith effort to resolve these specific evidentiary issues without further litigation. Their continued inclusion as Defendants is necessary to secure this relief and prevent spoliation.

## IV. Notice of Priority Mail Communications

Plaintiff will send updated correspondence to the Assistant Secretary of Labor and the U.S. Office of Special Counsel documenting OSHA's failures, including the December 9 closure, reinforcing evidence-preservation duties, and demanding acknowledgment and resolution in hopes of rendering aspects of this litigation moot.

## V. Updated Contact Information

Plaintiff's former email address became inaccessible due to a sudden Google lockout. Plaintiff could not retrieve messages or receive court notices. Plaintiff respectfully requests that the Court update all records to: **IronSyndication@gmail.com.** This ensures receipt of all future notices and prevents prejudice from technical issues.

## VI. Motion for Clarification

Plaintiff seeks clarification on whether the Court prefers:

1. Immediate scheduling; or

2. A brief administrative response period.
   Plaintiff requests 30 days to allow for a response from the Assistant Secretary of Labor and the OSC, **and for responses from Defendants LPP and Signal Security to the recent evidence preservation demands.**

## VII. Bivens Action

Plaintiff intends to pursue the *Bivens* action in any event but may seek counsel to do so.

Respectfully submitted.

**John Doe 1, Pro Se**

*[signature]*

**Linthacum, Sarah J - OSHA** <linthacum.sarah.j@dol.gov>
to me

Sep 24, 2025, 8:22 AM

You said you were available at 12 or 1PM on Monday. Which time is the on-site investigator meeting you?

---

**Linthacum, Sarah J - OSHA** <linthacum.sarah.j@dol.gov>
to me

Sep 24, 2025, 8:24 AM

I will also need you to provide me with the information for this on-site investigator for our investigatory process should you wish to continue with our office.

V/R,

Sarah

---

**Linthacum, Sarah J - OSHA** <linthacum.sarah.j@dol.gov>
to me

Sep 24, 2025, 11:05 AM

After conferring with my supervisors, it is clear that I have attempted to accommodate your wishes quite thoroughly and provided you with multiple times that you have told me would fit your needs. Therefore, this will be my last attempt. If you are unable to accomplish your telephone screening on or before COB (4:30PM CT) Monday, September 29, 2025, it will be dismissed for lack of cooperation. Please note the exert below from the Whistleblower Investigation Manual (WIM).

Complaints may be dismissed for Lack of Cooperation (LOC) on the part of Complainant.
These circumstances may include, but are not limited to, Complainant's:

Failure to be reasonably available for an interview;
Failure to respond to repeated correspondence or telephone calls from OSHA
Failure to attend scheduled meetings; and
Other conduct making it impossible for OSHA to continue the investigation, such as excessive requests for extending deadlines.
Harassment, inappropriate behavior, or threats of violence may also justify dismissal for LOC.

When Complainant fails to provide requested documents in Complainant's possession or a reasonable explanation for not providing such documents, OSHA may draw an adverse inference against Complainant based on this failure unless the documents may be acquired from Respondent. If the documents cannot be acquired from Respondent, then Complainant's failure to provide requested documents or a reasonable explanation for not doing so may be included as a consideration with the factors listed above when considering whether a case should be dismissed for LOC.

Also, I would like to address and clarify some information you have included in your former emails. As a former Air Force EOC Director who has a master's degree in special education, among other reasons, I understand how navigating the laws surrounding disabilities can be extremely vexing and hard to comprehend in their complexity so perhaps this brief guide will assist you in the future. (I can provide references, should you desire them)

**Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794)** – No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.
-Nothing has been denied to you. This is regardless of any disability you may or may not have.

**Section 508 of the Rehabilitation Act (29 U.S.C. § 794d)** – requiring accessible electronic and information technology.
-This only applies to the accessibility of content. The DOL has all mediums of accessible Electronic and information technology available to citizens through our website and in office:

**Electronic and Information Technology (EIT).** Information technology and any equipment or interconnected system or subsystem of equipment that is used in the creation, conversion, or duplication of data or information. For example, EIT includes, but is not limited to, products and services such as software applications, operating systems, web-based Internet and Intranet information systems, telecommunications products, electronic documents, videos and multimedia products, self-contained closed products, desktops and portable computers, and EIT support services.
-This is not applicable to you in this context.

**Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131–12134)** – mandating that public entities, including federal agencies, provide reasonable accommodations and ensure equal access to programs and services.
The purpose of Title II of the Americans with Disabilities Act is to ensure that buildings, facilities, rail passenger cars, and vehicles are accessible, in terms of architecture and design, transportation, and communication, to individuals with disabilities."
The only part here that would be related to WPP would be communication. By communication though, this is referring to assistive devices or technology. Such as, if a Complainant has an issue with verbal communication or hearing difficulties. In a case like that we could use an assistive device such as a Telecommunications Relay Service (TRS) which would be within Title II provisions for us to provide to them.
-If you do have need of a TRS please let me know and we can use it during the telephone interview.

**18 U.S.C. § 242 (Deprivation of Rights Under Color of Law)**
This law states: Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap, aggravated sexual abuse, or an attempt to commit aggravated sexual abuse, or an attempt to kill, shall be fined under this title, or imprisoned for any term of years or for life, or both, or may be sentenced to death.
-This has nothing to do with any kind of protection of disabilities, and I know nothing of any other information this might relate to, nor is it necessary for my investigation.